**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DANIEL JAMES AKERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-CV-1050-RLW |
| ) | |
| KILOLO KIJAKAZI, ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Daniel James Akers ("Akers") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act.

**I.      Background**

On March 5, 2018, Akers applied for DIB and SSI. (Tr. 190-203). His applications were denied on May 9, 2018. (Tr. 91-116). Akers was born in 1977, and his alleged disability began January 1, 2017 due to "mental issues." (Tr. 190). A hearing was held on August 19, 2019. (Tr. 22-55). On August 28, 2019, the ALJ issued a decision, finding Akers was not disabled. (Tr. 7-23). The ALJ determined that Akers engaged in substantial gainful activity through August 2017, but had not engaged in such activity since that time. (Tr. 12-13). The ALJ determined that Akers suffered from the severe impairments of major depressive disorder, generalized anxiety disorder, agoraphobia with panic attacks, alcohol use disorder, bipolar affective disorder, and a psychosis disorder not otherwise specified. (Tr. 13). The ALJ concluded that none of these conditions met

or equaled a listed condition, but found that Akers had some limitations. (Tr. 13-15). The ALJ found that Akers retained the residual functional capacity ("RFC") to perform work at all exertional levels but with the following nonexertional limitations:

> He has the ability to concentrate, persist, and remain on pace and adapt to simple, routine and repetitive tasks, which may require detailed instructions but do not involve complex tasks. The claimant can concentrate, persist, and stay on task and pace to adapt to work in an environment free of fast paced production requirements that involves only simple, work-related decisions with few if any, workplace changes. The claimant can have no public interaction but can work around co-workers but with only occasional interaction with co-workers and supervisors.

(Tr. 15). Based on the RFC and testimony from a vocational expert, at step four, the ALJ found Akers could perform his past relevant work as a warehouse picker, laborer cleaner, and recovery laborer, as actually and generally performed. (Tr. 18-19). Accordingly, the ALJ found Akers was not disabled. (Tr. 19).

The Appeals Council of the Social Security Administration denied Akers's request for review of the ALJ's decision on June 17, 2020. (Tr. 1-6). The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Akers filed this appeal on August 11, 2020. (ECF No. 1). On January 22, 2021, Akers filed a Brief in Support of his Complaint. (ECF No. 17). The Commissioner filed a Brief in Support of the Answer on April 22, 2021. (ECF No. 22). Akers filed his Reply Brief on May 6, 2021. (ECF No. 23).

As to Akers's testimony, work history, and medical records, the Court accepts the facts as provided by the parties.

##  II.    Legal Standard

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner

considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own

description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

This Court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th

Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

### III.     Discussion

#### A.     **The ALJ Correctly Resolved Conflicting Medical Opinions**

Thomas Spencer, Psy. D., performed a consultative psychiatric evaluation of Akers on May 3, 2018. (Tr. 353-57). In his report, Dr. Spencer opined that Akers's psychiatric conditions resulted in moderate to marked impairment in his ability to learn, recall, and use information, consistently stay on tasks, and relate to and work with others on a consistent basis. (Tr. 355). Dr. Spencer believed Akers could not manage his benefits without assistance. (Tr. 355). Dr. Spencer noted that Akers had a history of alcohol and methamphetamines, but had been in sustained remission

5

since 2003.  (Tr. 354-55).  Akers reported that he stayed busy throughout the day, watched minimal TV, maintained his activities of daily living, and kept the house clean.  (Tr. 355).

The ALJ found Dr. Spencer's opinion "not persuasive" because it was "not supported and consistent with the record as a whole."  (Tr. 18).  The ALJ found that the record showed Akers's psychiatric conditions improved with treatment and that Dr. Spencer's opinion was "vague and non-specific." (Tr. 18).  The ALJ explained that, at the time of Dr. Spencer's evaluation and opinion, Akers admitted he had not received any mental health treatment or psychotropic medications for nearly two years.  (Tr. 18).  The ALJ noted that the record reflected that Akers' mental health status improved when he was in treatment and compliant with his medications.  (Tr. 18).  The ALJ also found that Dr. Spencer's limitations were vague and non-specific.  (Tr. 18). That is, Dr. Spencer was unclear as to what moderate to marked limitations meant for Akers' mental functioning.  The ALJ maintained "it is still unknown how frequently [Akers] was moderately impaired versus how frequently he was markedly impaired" and "the overall impact on his ability to work."  (Tr. 18).

In contrast, the ALJ found State agency psychological consultant Kirk Boyenga, Ph.D.'s review of Akers's file, performed on May 7, 2018, to be persuasive because it was supported by and consistent with the examination of Dr. Spencer, the progress notes of record, and claimant's activities of daily living. (Tr. 18 (citing Dr. Boyenga's review at Tr. 91-114)).  Dr. Boyenga found that Akers was

> moderately limited in his ability to maintain concentration, persistence, and pace. He remains capable of understanding and remembering and carrying out at least simple instructions.  Moderate social limitations are present but [Akers] is capable of interaction as necessary in the workplace.  [Akers] will be able to adapt to changes in the workplace that are predictable and introduced gradually.

6

Thus, relying on the opinion of Dr. Boyenga, the ALJ found "the record supports that when [Akers] is actively engaged in treatment and is medication compliant he is able to perform at least simple instructions and interact appropriately in the workplace as indicated by the recent nearly normal mental status examinations." (Tr. 18, 414-34).

Akers claims that the ALJ's evaluation of Dr. Spencer's opinion is not supported by substantial evidence. (ECF No. 17). Akers claims that Dr. Spencer's opinion is supported by his examination, where Akers seemed antsy and restless (Tr. 355), as well as treatment notes from Akers's other providers which found Akers to be similarly agitated and anxious. (ECF No. 17 at 4). Akers claims that Dr. Spencer's opinion was also in line with Akers's reports to his treating providers and Social Security that he was anxious and paranoid. (ECF No. 17 at 5). Akers argues that ALJ improperly relied upon Akers's overall mental improvement to support a finding of not disabled. (ECF No. 17 at 6). Akers notes that a person's condition can improve but still be disabled. *Cox v. Barnhart*, 345 F. 3d 606, 609 (8th Cir. 2003). Akers argues that his continued reports of delusions and increases to his medication are evidence of continued disability, despite some improvement to his mental health. (ECF No. 17 at 6-7). Akers criticizes the ALJ for finding Dr. Spencer's opinion to be "vague" and "non-specific" because Dr. Spencer claimed Akers suffered from "moderate to marked" limitations. (ECF No. 17 at 7 (citing Tr. 18)). Akers notes that "moderate" and "marked" are defined by the regulations. (ECF No. 17 at 7 (citing 20 C.F.R. Part 404, Subpt. P, App'x 1, 12.00F(c), (d)). Thus, Akers argues that the ALJ's finding that Dr. Spencer's opinion was unpersuasive is not supported by substantial evidence because "[a] reasonable mind would not consider the numerous ongoing abnormalities in Akers's mental status, changes in his medication regimen, and Akers's own reported systems as inconsistent with, or not supportive of, Dr. Spencer's opinion." (ECF No. 17 at 7).

7

The Court finds that the ALJ's opinion is supported by substantial evidence. "The key issue is whether the Commissioner's decision is supported by substantial evidence in the record as a whole." *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006) (citing *Sultan v. Barnhart,* 368 F.3d 857, 862 (8th Cir. 2004)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) (citing *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). In determining whether evidence is substantial, this court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Travis*, 477 F.3d at 1040 (citing *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000)). "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.*

Here, the ALJ acknowledged the abnormalities outlined by Dr. Spencer as part of his examination of Akers, including his pressured speech, restless motor behavior, poor insight and judgment, circumstantial thought processes, difficulty staying on task and problems with short-term memory. (Tr. 355). However, the ALJ noted that Akers had not received any mental health treatment for two years prior to his examination with Dr. Spencer, and was not taking any medication at that time. (Tr. 16-18, 353, 54). Indeed, Akers reported he was "much better" when taking his medications and after some regular mental health treatment in August 2018. (Tr. 392, 396. Conversely, Akers's mood worsened when he did not take medications and his provider described him at "anxious". (Tr. 428, 430, 434). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Barnhart,* 390 F.3d 535, 540 (8th Cir. 2004) (internal quotations omitted); *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009).

Further, the Court finds that substantial evidence supports the ALJ's findings related to Akers's improved mental condition. As previously discussed, Akers argues that the ALJ improperly relied upon evidence that Akers's condition improved, because he still suffered from symptoms and his medications were routinely increased. (ECF No. 17 at 6). The ALJ, however, recognized that Akers still suffered from mental health issues and incorporated those impairments into the RFC for Akers. (Tr. 13, 15). Thus, the ALJ accepted Akers's mental impairments, but did not find them to be disabling based upon the record. *See Baker v. Apfel*, 159 F.3d 1140, 1145 (8th Cir. 1998) ("the fact that the claimant's pain is not so severe as to be disabling does not necessarily mean that it places no limits or restrictions on his ability to work").

Further, the Court agrees with the Commissioner that the limited increase in one of Akers's psychiatric prescription medications does not demonstrate that his condition was out of control or disabling. *See* ECF No. 22 at 9. As noted by the Commissioner, Akers was prescribed Wellbutrin (300 mg daily) and Vistaril (up to 400 mg daily) by his primary care provider for his depression and anxiety in June 2018. (Tr. 376). On July 2, 2018, Akers's psychiatrist prescribed 40 mg of Latuda to treat his bipolar disorder, but he continued his other two medications without changes. (Tr. 381). A few weeks, Akers's psychiatrist increased his Latuda to 80 mg and left his other two medications unchanged, when Akers requested controlled substances to treat his symptoms. (Tr. 390-91). On August 6, 2018, Akers reported he was doing "much better" and all medications were continued as previously prescribed. (Tr. 396-97). In October 2018, Akers switched to another psychiatrist, who prescribed 0.5 mg of Risperdal, discontinued Latuda, and did not change the Wellbutrin and Vistrail. (Tr. 418). Akers's prescription for Risperdal increased at three subsequent visits, but was unchanged at his last visit of record in June 2019. (Tr. 421, 424, 429, 434). Akers's Wellbutrin and Vistrail prescriptions remained unchanged since they were

9

originally prescribed in June 2018. (*Id*.) Thus, the Court finds that the ALJ correctly determined that Akers's medicine increases were conservative and effective, as evidenced by the fact that they were limited to one medication. *See Kisling v. Chater,* 105 F.3d 1255, 1257 (8th Cir.1997) (concluding that, if an impairment can be controlled through treatment or medication, it cannot be considered disabling); *Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009) (conservative treatments were inconsistent with allegations of disability).

The Court also finds that the ALJ's finding that Dr. Spencer's use of "moderate" and "marked" were vague was not erroneous. While "moderate" and "marked are terms of art used by the agency, Dr. Spencer's examiner's report should have included and opinion of Akers's functional limitations. 20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6) ("Although we will ordinarily request a medical opinion as part of the consultative examination process, the absence of a medical opinion in a consultative examination report will not make the report incomplete."). Dr. Spencer did not define what he meant by "moderate" or "marked," or indicate if he used them in a manner consistent with the agency's regulatory definition. (Tr. 353-57). More importantly, even if this determination was erroneous, the Court finds that the ALJ properly did not seek clarification from Dr. Spencer because it would have been futile, given that Dr. Spencer evaluated Akers when he was not receiving treatment.

In sum, the Court holds that the ALJ properly resolved the differences in the evidence and appropriately weighed the opinions in light of the record. The Court cannot reverse the decision of the ALJ merely because the claimant discerned some evidence to support his position when the opposite position was supported by substantial evidence in the record. *See Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 853 (E.D. Mo. 2004) (citing *Krogmeier v. Barnhart,* 294 F.3d 1019, 1022 (8th Cir. 2002) ("So long as substantial evidence supports that decision, the

court may not reverse it merely because substantial evidence in opposition exists in the record or because the court would have decided the case differently."). The Court finds that the evaluation by Dr. Boyenga, as well as Akers's conservative and limited treatment, provide substantial evidence for the Commissioner's decision and supports the finding that Akers was not disabled.

B. **ALJ Properly Evaluated Plaintiff's Subjective Complaints**

"Subjective complaints may be discounted if the evidence as a whole is inconsistent with the claimant's testimony." *Cox*, 471 F.3d at 907 (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984) (offering a list of factors the ALJ should consider in reviewing subjective complaints)). Because the ALJ was in a better position to evaluate credibility, the Court defers to the ALJ's credibility determinations as long as they were supported by good reasons and substantial evidence. *Cox*, 471 F.3d at 907; *Guilliams v. Barnhart,* 393 F.3d 798, 801 (8th Cir. 2005).

The ALJ found that Akers's subjective statements were "inconsistent because they are not supported by the objective evidence, examination findings, or progress notes of record. (Tr. 16). The ALJ noted there were gaps in Akers's treatment history and his activities of daily living were "not supportive of a finding of disability." (Tr. 16-17). In addition, the ALJ found that Akers's activities of daily living—including living alone, performing household chores, preparing his own meals, shopping for groceries, riding a bicycle, and managing his own money—did "not support[] a finding of disability." (Tr. 17).

Akers argues that "the ALJ failed to provide specific reasons for how Akers's reported symptoms were not consistent with the evidence." (ECF No. 17 at 9). He asserts his subjective complaints regarding his mental status are supported by his treatment and the record, and were improperly discounted by the ALJ. Akers claimed that his primary issue maintaining employment

11

was his psychiatric disorders, which caused him to get angry with other people.  (ECF No. 17 at 8 (citing Tr. 42)).  He testified he experienced delusions, causing him to become angry with others.  (ECF No. 17 at 8 (citing Tr. 40, 42)).  Akers claims he sought psychological treatment from two different psychiatric providers and a licensed professional counselor.  (ECF No. 17 at 9 (citing TR. 372-434)).  During that time, Akers psychiatric medications were regularly adjusted.  (ECF No. 17 at 9 (citing Tr. 381, 391, 418, 421, 424, 429)).  Akers claims that "[t]his level and type of treatment" supports Akers's subjective reports.  (ECF No. 17 at 9 (citing *Soc. Sec. Ruling 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 16, 2016)).  Akers further argues that the ALJ erred his evaluation of Akers's gaps in treatment because the ALJ did not consider other reasons for Akers's limited treatment history.  (ECF No. 17 at 9-10).  Akers asserts that the record reflected he was without health insurance and utilized free clinics for medications, and that he could not afford his medications.  (ECF No. 17 at 10 (citing Tr. 296-97, 354, 434).  Further, Akres argues that the ALJ erred when she found that Akers's activities of daily living were "not supportive of a finding of disability," where "she failed to provide any explanation or analysis as to how the ability to live alone, perform household chores, prepare meals, shop for groceries, manage his own money, and ride a bike were inconsistent with Akers's ability to get along with other people in the workplace."  (ECF No. 17 at 12).  Akers further noted that a finding of improvement in his psychiatric symptoms was not inconsistent with a finding of disability.  (ECF No. 17 at 12 (citing *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003) ("It is possible for a person's health to improve, and for the person to remain too disabled to work."))).  Finally, Akers asserts that, while his condition improved, he continued to report delusional thoughts, continued treatment, and increased his doses of medication, indicating a debilitating, chronic mental illness.  (ECF No. 17 at 12).

Here, the ALJ did not err in the analysis resolving Akers's reported symptoms with the evidence in the record. Contrary to Akers's claim, the ALJ "provide[d] specific reasons for how Akers's reported symptoms were not consistent with the evidence." (ECF No. 17 at 9). As previously discussed, the ALJ's opinion referenced evidence that Akers's symptoms were reasonably managed by conservative treatment and medications, without experiencing significant exacerbations or decompensation. (Tr. 384, 386, 396, 421, 424, 428, 434). Akers reported that his prescribed medications and therapy had reduced his mental health symptoms. (Tr. 45-46, 390, 396). Akers stated that the medications allowed him to work, but he did not work because of lack of transportation. (Tr. 375, 422). Further, the Court holds that the ALJ properly considered Akers's reported activities of daily living (having a driver's license, living alone, shopping, personal hygiene, and financial acumen) and found they supported a determination of not disabled. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i);[1] *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015).[2] Further, the Court holds that the ALJ properly considered gaps in treatment, particularly where Akers did not provide evidence of denial of care due to finances. *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992) ("While these hardships can be considered in determining whether to award a claimant benefits, however, the fact that she is under financial strain is not determinative."). Such gaps are particularly relevant where, as here, the claimant did

---

[1] "The information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms."

[2] "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints."; *Holmstrom v. Massanari,* 270 F.3d 715, 721 (8th Cir.2001) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)). This includes evidence pertaining to "the claimant's daily activities"; "the duration, frequency and intensity of the pain"; "precipitating and aggravating factors"; "dosage, effectiveness and side effects of medication"; and "functional restrictions." *Polaski,* 739 F.2d at 1322.

not provide evidence of denial of care due to finances.  *See Murphy*, 953 F.2d at 387 ("there is no evidence that the claimant had been denied medical care because of her financial condition"); *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014)(claimant "has simply not established good cause for not seeking medical care").  Finally, the Court holds that the ALJ properly found Akers's participation in full-time work (from January 2017 to August 2017) was inconsistent with his claim that he was unable to work, and likewise undercut his subjective claims of disability.  (Tr. 12-13, 227-28, 269-73); 20 C.F.R. §§404.1571, 416.971 ("If you are able to engage in substantial gainful activity, we will find that you are not disabled.").  Thus, the Court finds that the ALJ found substantial support for his opinion and properly addressed Akers's subjective complaints.

### IV.      Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**.  A separate Judgment will accompany this Order.

Dated this 14th day of March, 2022.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE